## STATE *vs.* MICHAEL DALEY.

A statute provided that every person who should commit manslaughter should suffer imprisonment in the state prison for not less than two nor more than ten years. A later statute repealed this, and provided that every person who should commit manslaughter should suffer imprisonment in the state prison, or county jail, for a term not exceeding ten years. Held, that a person who committed the crime of manslaughter while the former statute was in force, could not be convicted and punished for the offense after the enactment of the latter statute. [Ellsworth, J., dissenting.]

INDICTMENT for manslaughter. The crime was committed on the 6th day of May, 1860, and the prisoner was tried and convicted at the term of the superior court holden in Hartford county in July 1860. At the time of the commission of the crime the following statute, prescribing the punishment of

State *v.* Daley.

manslaughter, was in force, being the 6th section of the " act concerning crimes and punishments." " Every person who shall commit manslaughter, shall forfeit and · pay a fine not exceeding one thousand dollars, and suffer imprisonment in the Connecticut state prison for a term not less than two nor more than ten years." At the session of the General Assembly in May, 1860, the following act was passed, " in alteration of the act concerning crimes and punishments."

" Sec. 1. That every person who shall commit manslaughter, and be duly convicted thereof, shall forfeit and pay a fine not exceeding one thousand dollars, and suffer imprisonment in the Connecticut state prison, or county jail, for a term not exceeding ten years.

" Sec. 2. That section sixth, of the act of which this is an alteration, be and the same is hereby repealed."

The act took effect on the 4th day of July, 1860, and previous to the trial and conviction of the prisoner.

The prisoner moved in arrest of judgment, on the ground that he could not be convicted or sentenced under either of the acts, and the case was reserved for the advice of this court.

*C. Chapman* and *Doolittle,* in support of the motion, contended that the prisoner could not be convicted under the new statute, as that statute is wholly prospective in its terms, nor under the former statute, as that was expressly repealed by the new statute;—and that the offense could not be punished as one at common law, because the punishment of the crime of manslaughter had always been, in this state, regulated by statute, and the offense had been treated as a statutory one, and because the common law had been superseded, and so far repealed by the statute, which prescribes a different punishment from that to which the offense would have been liable at common law ; citing 1 Kent Com. 465 ; *Commonwealth* v. *Marshall,* 11 Pick., 350 ; *Commonwealth* v. *Kimball,* 21 id., 373 ; *State* v. *Danforth,* 3 Conn., 112 ; *Hale* v. *The State,* 15 id., 242 ; *Scutt* v. *Commonwealth,* 2 Virg. Cas., 54 ; *State* v. *Allaire,* 14 Ala., 435 ; *Leighton* v. *Walker,* 9 N. Hamp., 59 ; *Commonwealth* v. *Welch,* 2 Dana,

330; *Yeaton* v. *U. States*, 5 Cranch, .281; *U. States* v. *Preston*, 3 Pet., 57; *State* v. *Tombeckbee Bank*, 1 Stewart, (Ala.) 347; *Commonwealth* v. *Leftwich*, 5 Rand., 657; *Allen* v. *Farrow*, 2 Bailey, (So. Car.) 584; *U. States* v. *Passmore*, 4 Dallas, 373; *Daviess* v. *Fairbairn*, 3 How., 636; *The Irresistible*, 7 Wheat., 551; *State* v. *Whitworth*, 8 Porter, (Ala.) 434; *State* v. *Cole*, 2 McCord, 7; *Regina* v. *Denton*, 14 Eng. L. & Eq., 124.

*McFarland*, contra, contended that manslaughter being an offense at common law, and neither the former statute nor the new one assuming to create or even to define the offense, but merely prescribing the punishment for it, an indictment would lie for the offense even though the statute in force at the time of its commission had been repealed, and that the punishment prescribed by the statute in force at the time of the conviction could be inflicted; that the legislature in substituting the new statute for the old one, clearly did not intend to release from punishment all persons who had previously committed the crime, but had not then been convicted; that, as a general rule, where a repealing act re-enacts the provisions of the former statute in words of the same import, the effect is to continue, uninterrupted, the operation of the old statute so far as it is re-enacted; that here, by the very language of the two statutes, there was no instant of time when the crime of manslaughter was not punishable by a fine of $1,000, or by imprisonment not exceeding ten years; and that the crime being one at common law, was, as such, punishable under the general statute prescribing the punishment for common law offenses, which remained in force after the repeal of the special statute: citing *State* v. *Cole*, 2 McCord, 7; 1 Bishop Crim. Law, § 108; *Strong* v. *State*, 1 Blackf., 193; *State* v. *Williams*, 2 Rich., 418; Story on Const., § 1345; *Rex* v. *Lewis*, 2 British Crown Cas., 372; *Fullerton* v. *Spring*, 3 Wis., 667; *Knoupp* v. *Piqua Bank*, 1 Ohio S. R., 603; *McMullen* v. *Guest*, 6 Texas, 275.

STORRS, C. J. Although it is to be regretted that the legis-

State *v.* Daley.

lature should, before the trial of the defendant, have repealed the 6th section of the act concerning crimes and punishments, (Rev. Stat., tit. 6,) prescribing the punishment for the crime of manslaughter, of which he was convicted, which was in existence at the time of his commission of that crime, without making any provision, by way of saving or otherwise, by which the punishment therein prescribed, or any other, could be legally visited upon those who had previously been guilty of that offense, we are constrained to come to the conclusion that the effect of that repeal is to leave no sanction or punishment for that crime which is applicable to such previous offenders. The effect of such repeal was, for the most obvious reason, that the law, as to any proceedings under it which were not past and closed, must be considered as if it had never existed, and therefore furnishes no authority, after its repeal, for the commencement of any proceedings, or for the further prosecution of any which had been before commenced. Hence it has been often decided that if a provision of either the statutory or common law, which authorized a prosecution and conviction for a specific offense, is repealed before final judgment, the court can proceed no further with the case, and that sentence can not be pronounced, even although a verdict has been rendered against the prisoner, and he must therefore be discharged. 1 Bishop Crim. Law, § 103; and cases there referred to. Dwarris on Statutes, 535. It is very clear, therefore, that as the statute prescribing the punishment for the specific offense committed by the defendant, was repealed unqualifiedly after its perpetration and before his trial, no judgment can be rendered against him under that law. His escape from punishment might easily have been prevented if the legislature had, as they usually do, on the repeal of criminal laws, modified the repeal by a saving from its operation of offenses committed against the repealed law prior to such repeal; or it would have been competent, even by a new law, to provide for the punishment of previous violations of the law which had been repealed, provided such new law should not be obnoxious to the constitutional objection against *ex post facto* laws by providing a punishment exceeding in severity that

which was provided by the law repealed. But, probably through inadvertence, no such course was taken in the present instance.

By the act of the last session of the legislature repealing said 6th section, a punishment was prescribed for the crime of manslaughter different somewhat from that provided by that section, but as that act is prospective only in that respect and does not therefore apply to the commission of that crime prior to its taking effect, it does not embrace, and consequently provides no punishment for, the act committed by the defendant.

By the 177th section of the act of which the said 6th section is a part, a punishment much lighter than that prescribed in the latter section for manslaughter is provided, " in all cases of conviction of any person for any high crime and misdemeanor at common law ; " and it is claimed that the punishment provided by that section attached to it on the repeal of the 6th section.

It is true that manslaughter is here deemed to be a high crime and misdemeanor at common law, and therefore would be embraced by the terms of the 117th section, if there were no other section of the act specifically providing for its punishment ; and it would seem to be settled by modern decisions that it might, notwithstanding the statutory punishment prescribed by the 6th section, have been prosecuted as an offense at common law, and not *contra formam statuti*, since the 6th section did not create the offense but only prescribed the punishment of it as a common law offense, and, in the language of Lord Denman, in *Regina* v. *Williams*, (14 Law Jour., 164,) " it is the offense which is the subject of indictment and not the punishment." *Williams* v. *The Queen*, 7 Ad. & El. N. S., 250. Bishop Crim. Law, § 95; and cases there cited. But it has been, as far as we are acquainted, the invariable practice here to prosecute, not only the crime of manslaughter but also those other various common law offenses for which a specific punishment is prescribed in the several sections of the act concerning crimes and punishments, *contra formam statuti*, as if they were statutory and not common law offenses, probably

State *v.* Daley.

under the plausible though erroneous impression that so far as they were visited by a statutory punishment they should be regarded as statutory offenses, although not, as we think, under a belief that if they were not prosecuted in that manner but as common law offenses, they could on conviction be pun_ished under the 117th section, or with any other punishments than those specifically prescribed for them in the sections of that act respectively applicable to them. And we are clearly of the opinion that they were intended to be punishable, not under the 117th section, but exclusively in the manner specifically provided for them, and that it was not the design of that section to provide for the punishment of any of those common law offenses for which such specific punishments are provided which should be committed while the sections providing such specific punishments were in force, whatever might be the effect of the 117th section upon offenses for which such specific punishments were provided committed after the sections providing those punishments should be repealed. As a matter of construction therefore of the 117th section, we think that it does not apply to offenses committed during the existence of a law providing for them a specific punishment, and therefore that the defendant in this case is not punishable under that section. As, therefore, there remains no statutory or common law power to punish the defendant, the latter having been superseded by our present criminal code, which revised the whole subject and introduced a new and different system, the result is, that judgment should be arrested in this case. We are confirmed in this view of the case by the decision of the supreme court of Massachusetts, in the very similar case of *Commonwealth* v. *Marshall*, 11 Pick., 350.

We therefore advise the superior court that the judgment should be arrested.

In this opinion SANFORD, J., concurred, though expressing doubt. ELLSWORTH, J., dissented. HINMAN, J., did not sit in the case.

ELLSWORTH, J. The prisoner has been convicted of one of

the most heinous offenses known to the law, and now seeks to escape punishment, not on the ground that he has been unjustly convicted, but on the ground that, by one of the accidents of legislation, (for no one can regard it as anything else,) the statute which was in force at the time of the commission of the offense, in an attempt of the legislature to modify it, has been entirely repealed, and only a prospective enactment left in its place. While justice and the interests of society demand that he should receive the punishment of his crime, the question involved in the case is an important one, not only in itself, as involving a principle of not infrequent application, but is in the present instance specially important as other cases of manslaughter involving the same question are to be disposed of in the same manner with this.

I can not concur with my two brethren, who have arrived, with some hesitation as I understand them, at the conclusion that the conviction can not be sustained. I think that justice can be done and the crime punished, without violating any of the settled principles of law. The prisoner having been fairly convicted, and justly deserving punishment, we are not bound to lean in his favor, or to give him the benefit of every possible doubt which we may entertain upon the questions of law involved in his case.

I concede that, as the former statute has been expressly and unqualifiedly repealed, the prisoner can not be sentenced under that statute. It is very clear that the law under which the punishment is inflicted must be in force at the time of the sentence. I concede also that the prisoner can not be sentenced under the act of 1860. That act is clearly prospective in its terms—" every person who *shall* commit manslaughter "—and of course can not apply to the offense in question, which was committed before the act was passed. Were this all, I should be of opinion that the prisoner must be discharged. But the offense is one at common law. The statute in force at the time of the commission of the crime did not create it. It did not assume to define it even. It merely provided for its *punishment*. Nor does the new statute assume to create or to define the offense. Like the former one

State *v.* Daley.

it deals only with the punishment. The repeal then of the former statute did not leave the crime any the less a crime ; nor would the repeal of all statutory provisions on the subject. The crime remains a crime, and the criminal is liable to prosecution and conviction. The only question that can arise is with regard to the mode and extent of the *punishment.* The crime may be indictable as a crime at common law, even though no statute prescribes the punishment to be inflicted, or though a statute may prescribe a different punishment from that which would be inflicted at common law.

We come then to the question, the only one of any difficulty, whether there is any law under which the punishment can be inflicted. It is said that the former statute prescribing a specific punishment so far repealed the common law, and that, while it was in force, the common law punishment could not be inflicted. This is clearly so. It is then said that, when that statute was repealed, another was enacted, prescribing a similar specific punishment for the crime. But the new statute provided for the punishment only of crimes *thereafter committed,* and of course had no effect upon crimes before committed. These were left to the effect of the common law. As to these, the common law at once revived on the repeal of the statute, and provided the punishment. If the common law would allow a punishment more severe in its character than that which the statute prescribed, it may be very questionable whether a court could inflict a punishment more severe than the statutory one, but so long as the court should keep within the limit of the statute, it is not easy to see why it might not inflict an equal or less punishment, as a common law punishment. It is well settled that a statute changing the punishment of a crime to one of less severity, is not to be regarded, as to an offense committed before the change, as an *ex post facto* law. And I can see no good reason why the common law, which admitted of a punishment of less severity than that prescribed by the statute, might not, as to such equal or mitigated punishment, be regarded as coming into force and supplying its sanctions, immediately upon the repeal of the statute which in its original enactment had repealed that common law. It is a general principle of universal accepta-

tion, that where a statute repeals or supersedes the common law, the repeal of that statute revives the common law so repealed or superseded. This principle would not apply if the act repealing the statute had itself contained provisions covering the whole subject. Shaw, C. J., in *Commonwealth v. Marshall*, 11 Pick., 350. But the act in the present case, repealing the former statute, contains no provisions applicable to past offenses, but is limited in its application to future ones. It contains no provisions therefore which supersede or can interfere with the application of the common law to past offenses. This being so, the common law clearly was revived as to these past offenses, and supplies all the authority necessary for the punishment of the present offense.

I have considered the case thus far with reference solely to the common law. We have however a statute providing generally for the punishment of common law offenses, which has undoubtedly, as to the punishment of these offenses, superseded the common law. It provides that, " in all cases of conviction of any high crime and misdemeanor at common law, the court before whom such conviction is had may punish the offender at its discretion, either by imprisonment in the Connecticut state prison for a term of not more than five years, or in a common jail for a term not less than two months nor more than one year, and by a fine not exceeding five hundred dollars." Rev. Stat., tit 6, § 177. The punishment here prescribed, it will be seen, is less than that provided by either the former statute with regard to manslaughter, or by the act of 1860 on the same subject, while the punishment is of the same character (fine and imprisonment,) in them all.

It can perhaps make no difference whether the common law, or this general statute with regard to common law offenses, which may be regarded as superseding the common law, was in force when the former statute on the subject of manslaughter was enacted. Whichever was in force, it was repealed by the statute, and on the repeal of the statute was revived, either in its original form of the common law, or in the form of the general statute which may in the mean time have taken its

State *v.* Daley.

place; and either will supply all the authority necessary for inflicting upon the prisoner in the present case the punishment which his heinous crime demands.

The case will be simplified if we consider the repeal of the former statute on the subject of manslaughter as having been made independently of the new enactment on the subject. The new enactment, being confined to future offenses, is of course foreign to the matter of past offenses, like the one in the present case. As an enactment it may therefore be laid out of the case as wholly foreign to it. It is only as a repealing act that it has any application. We are to consider then the former statute as simply repealed, and so left. In this view it becomes very clear that whatever law, whether common law or statute, was repealed or superseded by its enactment, came again into force on its repeal.

I have examined with care the case of *Commonwealth* v. *Marshall*, 11 Pick., 350, which was pressed upon us by the counsel for the prisoner, and which is regarded by my brethren as an authority of much weight in support of the conclusion at which they have arrived, but I regard the case as differing from the present one in an important particular. There a statute forbade the disinterment of dead bodies. This statute was held as having abrogated the common law on the subject. After the repeal of the statute, and the enactment of another on the same subject, which applied only to future cases and contained no saving clause as to prior offenses, it was held that a violation of the statute committed before the repeal was not indictable after the repeal, on the ground that the statute was no longer in force, and that the common law, having been superseded by the statute, did not come into force, if at all, until after the crime was committed; but it is to be observed that the statute there dealt, not as here with the mere *punishment* of the offense, but with the *offense itself*; and that the offense when committed was regarded as a violation of the statute only, which had superseded the common law and which forbade the crime, and not of the common law, which was superseded and abrogated. Of course, if this was so, the subsequent revival of the common law would not

supply a law in force at the time the crime was committed. But in the present case the statute merely prescribed the punishment of an offense already prohibited and still remaining prohibited by the common law, and on its repeal the common law revived, not to supply a new law for the prohibition of the crime, but merely a new law for its punishment, which latter was clearly within the scope of legitimate legislation, whether that legislation operated to create a new law on the subject, or to revive an old one.

But while I think the present case may be clearly distinguished from the one here referred to, I am free to say that I am by no means satisfied with the reasoning of the court in that case.

In my opinion the judgment against the prisoner should not be arrested.

Advice that judgment be arrested.