(December 22, 1899.)

## In re JACK DAVIS.

### [59 Pac. 544.]

Writ of Mandate—Custody of Prisoner—Criminal Law—Ex Post Facto Law—Changing Place of Execution—Judgment.— The provision of section 159 of the Revised Statutes of 1887 is intended as and is a general saving clause to penal statutes, amendatory and otherwise, and continues in force a statute as it existed as to all offenses committed prior to repeal, and a person convicted of an offense and sentenced to death prior to repeal must be punished under the law as it existed at the time of the commission of the offense. Act of February 18, 1899 (Session Laws 1899, p. 340), amending certain sections of the Revised Statutes of 1887, regulating the time, place and manner of in-

flicting the death penalty, construed with section 159 of the Revised Statutes, is not applicable to past offenses and is prospective only in its operation.

(Syllabus by the court.)

Original application by sheriff of Cassia county to obtain custody of prisoner.

W. E. Borah, for Petitioner Burke.

The questions presented are, first: Is the new law unconstitutional and void by reason of its being *ex post facto* in this nature? Second: If so, is the old law repealed by virtue of the new law—or, in other words, under which law must the sentence resting upon Davis be carried out? So far as the new law is concerned the supreme court of the United States has held that such a law is *ex post facto* as to crimes committed prior to this passage, since it changes· the punishment in such material degree as to come within the inhibition of the constitution of the United States. This being a federal question, the decision of that court must, of course, be accepted as final. While Justice Brewer, with whom concurs Justice Bradley, dissents in a very vigorous opinion, yet we have no right to assume that the court will modify its views. We must be content, therefore, with this decision so far as this hearing is concerned. (*In re Medley,* 134 U. S. 160, 10 Sup. Ct. Rep. 384.) We contend, however, that we have a statute which serves as a general saving clause for all criminal statutes, and that by reason of this general saving clause the new law did not repeal the old. The object of this statute was and is to prevent the escape from punishment of those charged with or convicted of crime when any change, either in the quality of the crime or the punishment therefor, should take place before the completion of the punishment. (Idaho Rev. Stats., sec. 159.) This statute is found in California, and has there been construed in accordance with the views for which we contend. (*People v. McNulty,* 93 Cal. 427, 26 Pac. 597, 29 Pac. 61; *People v. Vincent,* 95 Cal. 425, 30 Pac. 581.) These decisions have also been approved by the supreme court of the United States. (*McNulty v. California,* 149 U. S. 645, 13 Sup. Ct. Rep. 959;

*Vincent v. California,* 149 U. S. 648, 13 Sup. Ct. Rep. 960.)
Investigation discloses that similar statutes have been adopted
and upheld by a great many states and often construed by the
courts. (*State v. Smith,* 62 Minn. 540, 64 N. W. 1022; *United
States v. Barr,* 4 Saw. 254, Fed. Cas. No. 14,527; *Kennish v.
Ball,* 30 Fed. 759; *Gibson v. State,* 35 Ga. 225; *Jordan v.
State,* 38 Ga. 585; *Volmer v. State,* 34 Ark. 488; *McCuen v.
State,* 19 Ark. 634; *State v. Shaf,* 24 Iowa, 486; *Acree v. Com-
monwealth,* 13 Bush, 353; *State v. Ross,* 49 Mo. 416; *Gille-
land v. ———— 9 Kan. 581; *State v. Boyle,* 10 Kan. 113;
State v. Crawford,* 11 Kan. 32; *State v. Matthews,* 14 Mo.
133; *Richardson v. State,* 3 Cold. 122; *Commonwealth v. Sher-
man,* 85 Ky. 686, 4 S. W. 790; Am. & Eng. Ency. of Law, sec.
437.) If the old law stands, it is quite clear that the warden
is improperly withholding from the custody of the petitioner
said Davis. He should be returned to the petitioner as sher-
iff, and authority for making such an order is especially pro-
vided for by our statutes. We think that there can be no doubt
but what our statute was intended to cover such and similar
emergencies as exist in this case. (Idaho Rev. Stats., sec. 8360.)

Attorney General S. H. Hays for Warden Hailey, contends:

That the Medley case may perhaps be considered as in some
measure modified by the decision in *Holden v. Minnesota,* 137
U. S. 483, 11 Sup. Ct. Rep. 143. On the question of *ex post
facto* laws generally, cites Am. & Eng. Ency. of Law, 2d ed.,
525.

Hawley & Puckett, *amicus curiae.*

The re-enactment of a statute destroys the vitality of the old
statute for any purpose. (*Sillings v. Harvey,* 6 Cal. 383; *Bar-
dock v. Memphis,* 30 Wall. 617; *Henderson v. Tobacco,* 30 Wall.
652; *Bartlet v. King,* 12 Mass. 537, 7 Am. Dec. 99; *Common-
wealth v. Cooley,* 10 Pick. 36; *Holbrook v. Nichel,* 36 Ill. 161;
State v. Andrews,* 30 Tex. 230; *Commonwealth v. Marshall,*
11 Pick. 350, 22 Am. Dec. 377; *Norton v. Folger,* 15 Cal. 284.)
The rule for the construction of penal statutes is that they are
to reach no further than their words. No person can be made

subject to them by implication, and all doubts concerning their interpretation are to preponderate in favor of the accused. (Bishop on Statutory Crimes, 194; *Ex parte Kohler* 74 Cal. 38, 15 Pac. 436.) Where a statute admits of two constructions, that which operates in favor of life or liberty is to be preferred. (*Commonwealth v. Martin,* 17 Mass. 359; *Commonwealth v. Keniston,* 5 Pick. 420; *Horner v. State,* 1 Or. 267.)

SULLIVAN, J.—This is an application for a writ of *habeas corpus* made by J. E. Burke, sheriff of Cassia county, to obtain the custody of one Jack Davis who was convicted of the crime of murder and sentenced to be hung therefor. Said sentence was stayed, pending an appeal to this court, which appeal was decided against said Davis, and thereafter his execution was fixed for February 1, 1899. Thereafter, upon application for a writ of *habeas corpus* to the federal court, execution was stayed until an appeal to the federal court should be determined. On February 18, 1899, the legislature of Idaho passed an act providing that the execution of all persons on whom the penalty of death was imposed should be within the walls of the penitentiary. Thereafter the sheriff of Cassia county delivered said Davis to the warden of the state penitentiary at Boise City, Idaho. By his petition he asks that the said Davis be restored to his custody, so that the sentence of the law may be carried out provided the appeal which is now pending in the circuit court of appeals, ninth circuit, shall be decided against said Davis.

When Davis was convicted, and judgment of death passed upon him, section 8021 of the Revised Statutes read as follows:

"Sec. 8021. The judgment of death must be executed within the walls or yard of a jail, or some convenient private place in the county. The sheriff of the county must be present at the execution, and must invite the presence of a physician, the district attorney of the county, and at least twelve reputable citizens, to be selected by him, and he shall, at the request of the defendant, permit such ministers of the gospel, not exceeding two, as the defendant may name, and any persons, relatives or friends, not to exceed five, to be present at the execution, together with

such peace officers as he may think expedient, to witness the execution. But no other persons than those mentioned in this section can be present at the execution, nor can any person under age be allowed to witness the same."

Thereafter, on February 18, 1899, said section 8021 was amended (see Sess. Laws 1899, p. 342) to read as follows:

"Section 8021. The state prison board of the state, at the expense of the state of Idaho, shall provide a suitable room or place, closed from public view within the walls of the state penitentiary, and therein erect and construct the necessary scaffolding, traps and appliances requisite for carrying into execution the death penalty; and the punishment of death must, when pronounced by sentence in this state, in each and every case, be inflicted by the warden in the state penitentiary, in a room or place, and with the appliances aforesaid, by hanging said convict by the neck until he shall be dead."

The question involved in this case is, under which law must the judgment against Davis be carried into execution—whether under the provisions of said section 8021 before amendment, or under its provision after amendment. So far as the provisions of said section, as amended, are concerned, the supreme court of the United States, in the case of *In re Medley*, 134 U. S. 160, 10 Sup. Ct. Rep. 384, 33 L. ed. 835, held that such a law is *ex post facto* as to crimes committed prior to its passage, since it changes the punishment in such a material degree as to come within the inhibition of the provisions of the federal constitution. This being a federal question, the decision of that court must be accepted as final. Therefore the execution of said judgment cannot be performed by the warden of the state penitentiary, and the warden has no right to the custody of said Davis.

The question then arises, Did the amendment of said section 8021 repeal its provisions as to the execution of the death sentence as they existed prior to the amendment, and thus leave no law under which said sentence may be executed and because thereof permit Davis to escape the judgment pronounced against him? Otherwise, to pardon him by legislation. It

certainly was not the intention of the legislature, by said amendatory act, to make a general jail delivery of all prisoners upon whom the death sentence had been passed and not carried into execution at the date of said amendment. Said amendatory act has attached thereto the usual repealing clause declaring that "all acts and parts of acts in conflict with this act are hereby repealed." It is contended by Messrs. Hawley & Puckett, who appear as friends of the court, that said amendatory act, amending certain sections of the Revised Statutes approved February 18, 1899 (see Sess. Laws 1899, p. 340), repeals the former provisions of said sections so amended, relating to the incarceration, punishment, and execution of persons condemned to death, and for that reason, under the rule laid down in *In re Medley, supra*, there is no law by which the judgment against Davis can be executed; while counsel for the petitioner contends that section 159 of the Revised Statutes of 1887 is a general saving clause for all criminal statutes such as those under consideration, and that by reason thereof the amendatory act did not repeal the old law relative to the manner, time, and place of the execution of the death penalty. Said section 159 is as follows:

"Sec. 159. The repeal of any law creating a criminal offense does not constitute a bar to the indictment and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment and punishment is expressly declared in the repealing act."

The evident purpose of that statute was and is to prevent the escape from punishment of those charged with or convicted of crime, where a change is made, by amendment of the statute then in force, either in the quality of the crime or in the punishment thereof, when the amended statute is to go into effect before the completion of the punishment imposed. Said section 159 was copied from the Political Code of California (section 329), and that section has been construed by the supreme court of that state in *People v. McNulty*, 93 Cal. 427, 26 Pac. 597, and 29 Pac. 61, as a general saving clause, and under it a person who has been convicted of an offense must

be punished under the law as it existed at the time of the commission of the offense, though the clause of the act prescribing the punishment has since been repealed by an amendment which increases the punishment. In *People v. Vincent,* 95 Cal. 425, 30 Pac. 581, the court cites with approval *People v. McNulty, supra.* Those decisions have been approved by the supreme court of the United States. (*McNulty v. People,* 149 U. S. 645, 13 Sup. Ct. Rep. 959, 37 L. ed. 882; *Vincent v. People,* 149 U. S. 648, 13 Sup. Ct. Rep. 960, 37 L. ed. 884. See, also, *State v. Smith,* 62 Minn. 540, 64 N. W. 1022.) Upon both reason and principle we think the rule laid down in those cases correct when applied to the construction of the provisions of said section 159. The amendments, as made by said act, do not apply to convictions for offenses committed before their enactment, and are not applicable to past offenses and are prospective only in their operation.

Under the facts of this case, as supplemented by the provisions of section 8360 of the Revised Statutes, which is as follows: "Sec. 8360. In cases where any party is held under illegal restraint or custody, or any other person is entitled to the restraint or custody of such party, the judge or court may order such party to be committed to the restraint or custody of such person as is by law entitled thereto"—the petitioner, as sheriff of said Cassia county, is entitled to the custody of said Davis. Under the law as it was before it was amended, said sheriff was the legal custodian of said Davis until the judgment of the court has been executed, and, as said law was not changed as to Davis, the sheriff remains his legal custodian, and is now entitled to his custody. It is therefore ordered that said Jack Davis be committed to the custody of the petitioner, J. E. Burke, sheriff of Cassia county, to be dealt with according to law and the authority of the court having jurisdiction in the premises.

Huston, C. J., and Quarles, J., concur.