# DAVIS *v.* BURKE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF IDAHO.

No. 286.    Argued December 3, 1900.—Decided December 17, 1900.

Defendant being convicted of murder, carried the case to the Supreme
Court of the State, but made no claim there of a Federal question. *Held:*
That before applying to a Circuit Court of the United States for a writ
of *habeas corpus* he should have exhausted his remedy in the state
court, either by setting up the Federal question on his appeal to the
Supreme Court, or by applying to the state court for a writ of *habeas
corpus.*

The constitution of Idaho, providing for the prosecutions of felonies by
information, is so far self-executing that a conviction upon information
cannot be impeached here upon the ground that defendant has been de-
nied due process of law.

The question whether a convict shall be executed by the sheriff, as the law
stood at the time of his trial and conviction, or by the warden of the
penitentiary, as the law was subsequently amended, or whether he shall
escape punishment altogether, involves no question of due process of law
under the Fourteenth Amendment.

THIS was an appeal from an order denying a writ of *habeas
corpus* to the appellant Davis, who was, on April 15, 1897, found
guilty of murder in the District Court of Cassia County, Idaho,
and sentenced to be hanged June 4, 1897.

Motion for a new trial was denied, an appeal taken to the
Supreme Court of Idaho, and on May 6, 1898, the judgment of
the lower court was affirmed. 53 Pac. Rep. 678.

His execution having been postponed, an application for par-
don was presented to the State Board of Pardons, and was
denied January 23, 1899. Thereupon a petition for a writ of
*habeas corpus* was presented to the United States District Judge
for Idaho, which was denied January 30; and an appeal taken
from this order was on April 16, 1899, dismissed by the Circuit
Court of Appeals, *Davis* v. *Burke,* 97 Fed. Rep. 501, upon the
ground that, as the appeal involved a construction of the Fed-
eral Constitution, that court was without jurisdiction.

Section 8021 of the Revised Statutes of Idado provides that executions of defendants convicted of murder in the first degree shall take place at the county jail under the direction of the sheriff; but while this case was pending before the Circuit Court of Appeals this section of the statute was amended, Laws, 1899, page 340, so as to provide for the execution of criminals at the state penitentiary 'under the direction of the warden. After the passage of this act, February 18, 1899, Davis was removed from the jail of Cassia County to the state penitentiary.

Upon being advised that this proceeding was erroneous, Burke, the sheriff of Cassia County, applied to the Supreme Court of Idaho for a writ of *habeas corpus.* That court decided that the act of February 18, 1899, above mentioned, regulating the time, place and manner of inflicting a death penalty, was not applicable to past offences, and that Davis should be executed in accordance with the law as it stood at the time of the commission of the offence, the trial and original sentence. 59 Pac. Rep. 544. In accordance with that decision appellant was returned to the custody of the sheriff.

After the decision in the Circuit Court of Appeals, and while awaiting a resentence by the state court, appellant presented this petition for a writ of *habeas corpus* to the Circuit Court of the United States for the District of Idaho, and upon the denial of such petition appealed to this court.

*Mr. James H. Hawley* for appellant.    *Mr. J. W. Dorsey* and *Mr. Edgar Wilson* were on his brief.

*Mr. Samuel H. Hays* for appellee.    *Mr. W. E. Borah* was on his brief.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

The assignments of error, which are somewhat voluminous, are practically resolvable into two questions, first, whether the petitioner was legally prosecuted by information, and, second, whether the act of February 18, 1899, providing for executions

at the state penitentiary under the direction of the warden, is as to this defendant *ex post facto,* and, as dependent upon this, whether he could be executed under section 8021 of the Revised Statutes as it formerly stood, after that section had been repealed by the act of February 18, 1899.

(1) The constitution of Idaho contains the following clause: " Art. 1, Sec. 8. No person shall be held to answer for any felony or criminal offence of any grade, unless on presentment or indictment of a grand jury, or on information of the public prosecutor, after a commitment by a magistrate." Appellant's answer to this is: (*a*) That the provision is not self-executing. (*b*) That a law passed March 13, 1891, known as the Information Act, is void, because it was not passed in the manner required in the Idaho constitution, and that the journals of the legislature may be resorted to to determine this question.

In reply to his first contention, it is sufficient to say that this case has been twice before the Supreme Court of Idaho, and upon neither occasion was the point made that it could not be prosecuted by information. The first time it was carried there by appeal from the judgment of the lower court, following a trial upon the merits, and was there affirmed. 53 Pac. Rep. 678. After conviction, and after the surrender of Davis by the sheriff to the warden of the penitentiary, in pursuance of the act of February 18, 1899, the sheriff made an original application to the Supreme Court for a writ of *habeas corpus* to obtain the custody of Davis, who had been surrendered to the warden of the penitentiary. This was granted. 59 Pac. Rep. 544. Upon the hearing of that case, counsel, who we, · admitted to appear on behalf of the prisoner as *amici curiæ,* insisted that the provisions of the Revised Statutes for the execution of prisoners having been repealed, and the provisions of the act of February 18, 1899, being *ex post facto,* there was no law under which Davis could be executed; but no question was made as to the validity of prosecutions by information.

The rule is well settled in this court that, while there may be a power on the part of the Federal courts to issue a writ of *habeas corpus* where the petitioner insists that he has been deprived of his liberty without due process of law, that power will

not ordinarily be exercised until after an appeal made to the state courts has been denied. *Ex parte Royall,* 117 U. S. 241; *Ex parte Fonda,* 117 U. S. 516; *In re Duncan,* 139 U. S. 449; *In re Wood,* 140 U. S. 278; *Cook* v. *Hart,* 146 U. S. 183; *In re Frederich,* 149 U. S. 70; *New York* v. *Eno,* 155 U. S. 89; *Whitten* v. *Tomlinson,* 160 U. S. 231; *Baker* v. *Grice,* 169 U. S. 284; *Markuson* v. *Boucher,* 175 U. S. 184.

Certain exceptional cases have arisen in which the Federal courts have granted the writ in the first instance, as where a citizen or subject of a foreign State is in custody for an act done under the authority of his own government; or an officer of the United States has been arrested under state process for acts done under the authority of the Federal government, and there were circumstances of urgency which seemed to demand prompt action on the part of the Federal government to secure his release. *Wildenhus's Case,* 120 U. S. 1; *In re Loney,* 134 U. S. 372; *In re Neagle,* 135 U. S. 1. It is recognized, however, that the power to arrest the due and orderly proceedings of the state courts, or to discharge a prisoner after conviction, before an application has been made to the Supreme Court of the State for relief, is one which should be sparingly exercised, and should be confined to cases where the facts imperatively demand it. While the power to issue writs of *habeas corpus* under Rev. Stat. sec. 753, nominally extends to every case where a party "is in custody in violation of the Constitution, or of a law or treaty of the United States," it is not every such case where the interference of the Federal court is demanded, particularly where the state court is executing its own criminal laws, and is asserting a jurisdiction which does not reside elsewhere, to try an accused person for a violation of such laws. The state courts are as much bound as the Federal courts to see that no man is punished in violation of the Constitution or laws of the United States; and ordinarily an error in this particular can better be corrected by this court upon a writ of error to the highest court of the State than by an interference, which is never less than unpleasant, with the procedure of the state courts before the petitioner has exhausted his remedy there.

This case is peculiarly one for the application of the general

rule. Not only was there ample opportunity for making this defence upon the original hearing in the Supreme Court, or upon an independent application for a writ of *habeas corpus;* not only does the question involve the construction of the constitution and laws of the State with which the Supreme Court of the State is entirely familiar, but a ruling by this court that prosecutions by information in the courts of Idaho are invalid might result in the liberation of a large number of persons under sentence upon convictions obtained by this method of procedure. A step so important ought not to be taken without full opportunity given to the state court to pass upon the question, and without clear conviction of its necessity.

(2) But we are also of opinion that for the purposes of this case the provision of the Idaho constitution must be deemed self-executing. The rule is thus stated by Judge Cooley in his work upon Constitutional Limitations (p. 99): " A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Thus, a constitution may very clearly require county and town government; but if it fails to indicate its range, and to provide proper machinery, it is not in this particular self-executing, and legislation is essential."

Where a constitutional provision is complete in itself it needs no further legislation to put it in force. When it lays down certain general principles, as to enact laws upon a certain subject, or for the incorporation of cities of certain population, or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution. But where a constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provisions. In short, if complete in itself, it executes itself. When a constitution declares that felonies may be prosecuted by information after a commitment by a magis-

trate, we understand exactly what is meant, since informations for the prosecution of minor offences are said by Blackstone to be as old as the common law itself, and a proceeding before magistrates for the apprehension and commitment of persons charged with crime has been the usual method of procedure since the adoption of the constitution. It is true the legislature may see fit to prescribe in detail the method of procedure, and the law enacted by it may turn out to be defective by reason of irregularity in its passage. In such case a proceeding by information might be impeached in the state court for such irregularity, but it certainly would not be void so long as it was authorized by the Constitution. For us to say that the accused had been denied due process of law would involve the absurdity of holding that what the people had declared to be the law was not the law.

(3) The question whether appellant shall be executed under the act of the legislature by the warden of the penitentiary, or under the Revised Statutes, as the law stood at the time of his trial and conviction, by the sheriff, or whether he shall escape punishment altogether, was determined adversely to him by the Supreme Court of the State, 59 Pac. Rep. 544, and involves no question of due process of law under the Fourteenth Amendment. *McNulty* v. *California*, 149 U. S. 645.

The order of the Circuit Court of the United States for the District of Idaho denying the writ of *habeas corpus* is, therefore,

*Affirmed.*