THE STATE OF WEST VIRGINIA *et al. v.* JULIAN F. BOUCHELLE, *Judge, etc., et al.*

(No. 8542)

Submitted June 22, 1937. Decided June 26, 1937.

*Clarence W. Meadows,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for petitioners.

*Steptoe & Johnson, Stanley C. Morris, Robert W. Lawson, Jr.,* and *William F. Wunschel,* for respondents.

KENNA, PRESIDENT:

This rule in prohibition was awarded upon the petition of the State of West Virginia, Homer A. Holt, Governor, R. E. Talbott, Treasurer, Edgar B. Sims, Auditor, Clarence W. Meadows, Attorney General, West

Virginia Liquor Control Commission, a corporation, R. E. Kelly, chairman of that commission, and S. M. Peters and A. Spates Brady, members thereof, against the Honorable Julian F. Bouchelle, Judge of the Circuit Court of Kanawha County, and Chicago House Furnishing Company, a corporation. The petition alleges that the Chicago House Furnishing Company, on the 30th day of April, 1937, in aid of an execution in its favor issued from the Circuit Court of Kanawha County against one Raymond Wiggington, an employee of the West Virginia Liquor Control Commission, caused a suggestion to be issued directed to the petitioners as debtors of the judgment debtor commanding them to appear before the judge of that court on the 1st day of the next term of that court, which was May 10, 1937. The petition alleges that the petitioners herein, who were duly served with the suggestion, being fully advised that it was void and of no effect, upon the return day did not appear nor make answer, and that thereafter, on the 2nd day of June, 1937, the Chicago House Furnishing Company procured a rule to answer the suggestion on or before the 14th day of June, 1937, and caused it to be served upon each of petitioners.

The petition alleges that the suggestion issued against petitioners is based entirely upon Section 35, Article VI of the Constitution of the State of West Virginia as amended by popular vote at the general election held in November, 1936. That section of the constitution, as so amended, reads as follows:

> "Section 35. The state of West Virginia shall never be made defendant in any court of law or equity, except the state of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

The basis upon which the petitioners rest their case is that this section of the constitution, as amended, cannot be put into operation without further legislation setting

up in detail the method and procedure by which it is to be carried into effect or, in other words, that the section as it now stands is not a "self-executing" provision. If it is not self-executing, then there is at present no way by which the state can be made to respond to a summons based upon suggestion, and the rule issued against petitioners by the Circuit Court of Kanawha County is of no effect. The main points relied upon by the petitioners to sustain this viewpoint are the following:

(1) That the language "except the state of West Virginia * * * may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee" is intended only to empower the legislature, if it chooses, to provide by law that the state may be made defendant in garnishment or attachment.

(2) That there is no way under existing law or under the section in question by which the State of West Virginia can be served with process in garnishment or in attachment and hence there is no possible way to make the state a party to either proceeding without further legislation.

(3) That inasmuch as the State of West Virgina is not specifically mentioned in any of the present statutes dealing with the subjects of garnishment and attachment, those statutes cannot be made applicable to it.

(4) That it is totally impossible to adapt the present statute law of this state upon the subjects of attachment and garnishment to the State of West Virginia.

By their demurrer and answer, the respondents deny the basis upon which petitioners seek the peremptory writ of prohibition, and take issue with the points relied upon to sustain it.

We are not impressed with the first argument advanced on behalf of the petitioners. Section 35 of Article VI, before the recent amendment was made to it, provided simply that the State of West Virginia should never be made a defendant in any court of law or equity. It was a sweeping interdiction addressed to the courts, operating upon the legislature, and manifestly containing within itself the material of its independent vitality.

It was "self-executing." The amendment that was adopted in last fall's general election was plainly intended as an exception to the operation of the section as originally written. Its very language makes it so— "except the state of West Virginia * * * may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee." It is not the language usually employed to vest in the legislature the power to legislate in those instances where that power would otherwise not exist. We are of the opinion that within the confines of the language employed and without more, Section 35 of Article VI, as amended, cannot be construed as merely granting to the legislature the right to provide that the State of West Virginia may be made defendant in any garnishment or attachment proceeding. We would incline more to believe that if nothing beyond the language of that section were before us for consideration, we would be obliged to conclude that as it now stands it is an interdiction to the making of the State of West Virginia a party defendant in any court of law or equity, containing an exception the purpose of which is to prevent the inhibition from applying to garnishment or attachment proceedings.

The second point advanced by the petitioners, we believe, is well taken. We know of no way under the present law of this state by which the State of West Virginia, as such, can be served with process. Certainly without a method of serving the state with process it is not possible to subject it to the laws of garnishment and attachment. Counsel for the respondents do not urge that the effect of the amendment to Section 35 is to adopt for its purpose the present statute law of the state respecting service of process, and to make that law applicable to the state in so far as garnishment and attachment is concerned. Such an argument would be manifestly untenable because it would not be possible to apply every statute that we have on the subject of the service of process, even those applicable to private corporations, to the State of West Virginia and to its various administrative corporations, boards, commissions, bureaus and

institutions. Neither, we think, could the solution of such a problem, if it could be solved by applying one or more of our present statutes, be addressed to the courts. It is manifestly for the legislative branch.

Counsel for respondents, however, do advance in opposition to the second point raised by petitioners the contention that without statutory authorization a sovereign state may be served with process through the Governor and Attorney General. They ground this contention upon the case of *Edward Thompson Company* v. *Maynard*, 269 Mich. 97, 256 N. W. 817, which was an affirmance by an evenly divided court resulting in the holding that a valid service upon the state could be had by means of process delivered to the Governor or the Attorney General. This case, in turn, rested in the main upon *Chisholm* v. *Georgia*, 2 Dallas (2 U. S.) 419, 1 L. Ed. 440. The reasoning of the latter case has been almost universally assailed, and, of course, the Michigan case is no more than authority in name, since it was a decision by an evenly divided court. Inasmuch as all of our statutes upon the question of process were adopted at a time when the constitution, without exception, provided that the State of West Virginia should never be made a defendant in any court of law or equity, we readily reach the conclusion that they were not intended to apply to the State of West Virginia, and, inasmuch as the Constitution of the State of West Virginia could not possibly have been written with the purpose in mind of creating any officer upon whom service could be had for the state for the very efficient reason that the state could not be made a party defendant, we are obliged to conclude that there is nothing that inheres in the office of either Governor or Attorney General that would make those officers the representatives of the State of West Virginia for the service of process. We cannot say that the amendment to Section 35 of Article VI had the effect of doing so. It certainly does not do it in express language and we are definitely of the opinion that it does not do it by implication. We think that it is quite clear that Section 35 of Article VI, as it now stands, requires further legis-

lation with reference to the service of process thereunder before it can be put into practical operation.

The third point that the Attorney General advances on behalf of the petitioners to the effect that statutes are not applicable to the sovereign unless the sovereign is expressly named in them may be conceded as a sound general rule of statutory construction. We believe, however, that the construction of the statutes in question cannot be of great assistance in determining the constitutional question that is before us. If the purpose to do so were manifest in the wording of the constitution, we have no doubt that statutes could be made to apply to the state even though the state were not expressly mentioned in them. The constitution being paramount to the statutes, the construction of the latter could hardly be determinative of the meaning of the former. The fact that the State of West Virginia is not expressly named in any of our statutes on the question of garnishment and attachment could not provide, by and of itself, a valid reason for those statutes not applying to the state if the constitution itself made it clear that they should.

The fourth contention advanced for the petitioners, we think is sound beyond question. The reasons for saying that it is impossible to apply in its entirety the present statute law of this state upon the subjects of attachment and garnishment to the State of West Virginia are so numerous that it is impossible to discuss more than one or two of the most cogent.

To begin with, if the State of West Virginia were to be subjected to the law of attachment and garnishment as it now exists in this state, then the State of West Virginia, by failure to answer after proper service of summons in suggestion, would become liable for the debt of the judgment debtor. This would violate directly the provisions of Section 6 of Article X of the Constitution, which prohibits the state becoming responsible for the debts and liabilities of any county, city, township, corporation or person. To adapt the present statutes on attachment and garnishment to the State of West Virginia would therefore force us to say that the latter sec-

tion had, by implication, been repealed in part. We do not think that the reading of Section 35 of Article VI, as it now stands, is susceptible of that interpretation.

To say that we must read into Section 35 of Article VI of the Constitution all the law of attachment and garnishment and make that law applicable to the State of West Virginia, we think, would raise the sharp horns of a legal dilemma. Would such a construction mean that the law of attachment and garnishment *as it existed* at the time the constitutional amendment to Section 35 of Article VI was adopted was to be applied to the State of West Virginia, or would it be that law *as changed from time to time* by the legislature? If we take the former construction, then the law of attachment and garnishment as affects the State of West Virginia would be completely and altogether static, and those two remedies consequently come in time to mean something quite different as to private litigants from what they meant as to the state. Certainly this cannot be said to be a desirable consequence nor one that can be read into the purpose of the amendment to the section as shown from its language. On the other hand, if we interpret the amendment to Section 35 as meaning that the legislature may change from time to time the law of attachment and garnishment applicable to the state, the query then arises where these changes shall stop, and whether the legislature might not then have power to abolish entirely the statute law of attachment and garnishment and thus defeat the purpose of the constitution itself as so construed.

If the legislature can alter the law of attachment and garnishment that would be applicable to the State of West Virginia under Section 35, as amended, then it would seem that the legislature could not be restricted as to the scope and nature of those alterations. If that is so, then the legislature might repeal the entire law of attachment and garnishment, or it could enact laws of attachment and garnishment that were expressly made inapplicable to the State of West Virginia. It is perfectly obvious that if it could, by repealing all of the law of attachment and garnishment, defeat the purpose

of the constitution, then it could also provide statutes on attachment and garnishment that were expressly made not applicable to the state. It would seem necessarily to follow that if it lies within the power of the legislature from time to time to alter the laws of attachment and garnishment in so far as those remedies affect the state, then Section 35, as amended, entirely lacks the inherent vitality of a "self-executing" constitutional provision.

In the case of *Davis* v. *Burke*, 179 U. S. 399, 403, 21 S. Ct. 210, 212, 45 L. Ed. 249, the Supreme Court of the United States quoted with approval the following language from Cooley's Constitutional Limitations, at page 99: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Thus, a constitution may very clearly require county and town governments; but if it fails to indicate its range, and to provide proper machinery, it is not in this particular self-executing, and legislation is essential." We are of opinion that even though it might be successfully maintained that Section 35 of Article VI, as amended, confers the right to make the State of West Virginia a party defendant in attachment and garnishment proceedings, at the same time it is perfectly apparent that that section totally fails to prescribe rules by which such a right may be invoked and enforced. On this ground alone, we would be forced to hold that the section, as amended, is not a "self-executing" provision.

There is, we think, but one further matter that requires discussion. Counsel for the respondents indicated in oral argument, and to some extent have taken the position in their brief, that the courts would have power to pick out that part of our statute law on the subject of attachment and garnishment which could properly be invoked in making the State of West Virginia a party defendant to those proceedings, and to reject that part

of our statute law that would be inapplicable to the State of West Virginia in that connection. It was suggested that the courts might apply the law of attachment and garnishment to the State of West Virginia up to, but not inclusive of, the right to take judgment against the state. This one example is used simply to illustrate the argument. As is well known, attachment and garnishment are entirely statutory remedies. We think, therefore, that it would be an anomalous principle to say that under this section, as amended, these remedies with respect to the State of West Virginia could be made to rest in judicial determination of what statutes were intended to be made applicable to the state by the legislature in submitting and by the people in voting the amendment to Section 35 of Article VI. It seems to us that such a selection of principles to govern subject matter that is essentially statutory, is quite obviously a duty for the legislature and not for the courts.

For the reasons that we have stated, a peremptory writ of prohibition will be awarded as prayed.

*Writ awarded.*